### FREED v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted March 1, 1920. Decided April 5, 1920.)

No. 3314.

1. **Indictment and information ☞110(51)—Indictment for violating White Slave Traffic Act, paraphrasing statute, held proper.**

   An indictment charging that on a certain day accused transported, caused to be transported, and aided and assisted in transporting in interstate commerce, a certain woman for the purpose of prostitution, was in proper form; Act June 25, 1910 (Comp. St. §§ 8812–8819), contemplating that the offense may be committed in various ways, and the pleader merely paraphrasing the statute.

2. **Indictment and information ☞129(1)—Indictment for violating White Slave Traffic Act properly included transportation of several women.**

   Where driver of an automobile, receiving a commission on its earnings in addition to salary, aided two women in procuring men with whom illicit relations were to be had, and, having brought the men and women together, drove across the Potomac into Virginia, where the illicit acts took place, the two offenses growing out of the transaction were so connected as to be within the provision of Rev. St. § 1024 (Comp. St. § 1690), and were properly included in different counts in one indictment.

3. **Criminal law ☞510—Uncorroborated testimony of accomplice sufficient at common law.**

   At common law the uncorroborated testimony of an accomplice will support a verdict of conviction.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Criminal law ⊜780(1)—Court should direct attention of jury to nature of accomplice evidence.**

While there is no absolute rule of law preventing convictions on the testimony of an accomplice, the jury should be instructed and cautioned as to the character of such testimony, and the danger of convicting without supporting evidence.

**5. Criminal law ⊜780(2)—Evidence held to require instruction as to whether women transported to another state for prostitution were accomplices.**

In a prosecution for transporting women in interstate commerce for the purpose of prostitution, held, under the evidence, that the jury might have found that each of the women, who testified against accused, was an accomplice, entitling accused to an instruction concerning such evidence.

**6. Criminal law ⊜780(3)—Instruction as to accomplice testimony held insufficient.**

In a prosecution for transporting women in interstate commerce for purpose of prostitution, where the jury may have found that the women, who testified for the prosecution, were accomplices, and accused requested proper instructions concerning accomplice testimony, an instruction by the court concerning the witnesses: "You have noticed their manner of testifying, and you have heard more or less about what kind of people they are. All these things you should keep in mind when your are weighing the testimony of any witness, in order to determine what credibility it is entitled to"—amounted to nothing more than the general admonition, which it is proper for the court to give in all cases, and fell far short of the requirements of the situation.

**7. Criminal law ⊜827—Request for instruction held sufficient to point out that some witnesses might be considered accomplices.**

While a request for instructions as to accomplice testimony included only two of a number of witnesses, it was sufficient to bring to the attention of the court the fact that some of the witnesses at least might be considered accomplices, and hence that the jury should be cautioned and advised concerning such testimony.

Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

David Freed was convicted under an indictment charging that he transported and aided and assisted in transporting in interstate commerce certain women for the purpose of prostitution and appeals. Reversed, and new trial awarded.

J. A. O'Shea, of Washington, D. C., for appellant.

J. E. Laskey, U. S. Atty., and T. Hardy Todd and Morgan H. Beach, Asst. U. S. Attys., all of Washington, D. C.

ROBB, Associate Justice. Appellant, defendant below, was convicted in the Supreme Court of the District under two counts of an indictment, the first of which charged that on a certain day he transported, caused to be transported, and aided and assisted in transporting, in interstate commerce for the purpose of prostitution, a woman by the name of Sue McLain; the second count being a duplicate of the first, except that the name of the woman was Blanche Phillips. The sentence was 5 years in the penitentiary.

The defendant was 20 years of age and the driver of an automobile, receiving a commission on its earnings in addition to wages. The evidence for the government tended to show that he aided the two

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

women named°in procuring men with whom illicit relations were to be had; that, having brought the men and women together, the party would be driven across the Potomac river into Virginia in defendant's automobile, where the illicit acts would take place (but not in the presence of defendant), the men paying the women, and also paying defendant for transporting them. The witnesses for the government were the two women named in the indictment, a third woman who accompanied them and participated in the occurrences upon which the indictment was based, and two of the men who were members of the party. One other witness testified to seeing defendant drive the party away from the place in this city where the two women were stopping on the night in question.

[1, 2] The indictment was in proper form. Kidwell v. U. S., 38 App. D. C. 566; Wiborg v. U. S., 163 U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Anderson v. U. S., 170 U. S. 481, 18 Sup. Ct. 689, 42 L. Ed. 1116. The statute (36 Stat. 825 [Comp. St. §§ 8812–8819]) contemplates that the offense denounced therein may be committed in various ways, and the pleader has merely paraphrased the statute. The two offenses, growing out of the same transaction, are so connected as to be within the provisions of section 1024, R. S. (Comp. St. § 1690), which we reviewed in the Kidwell Case.

A more serious question is involved in the next contention of defendant, based upon his request for an instruction that, if the jury should find that the women named in the indictment were accomplices, they then would have to inquire whether or not there was corroborating evidence, and for another instruction that the testimony of these women should not be taken as that of ordinary witnesses, but "ought to be received with suspicion, and with the very greatest care and caution." These prayers were refused, and the only instruction given in this connection was the following:

"Now a general comment in regard to the witnesses. You have seen the witnesses on the stand, and you have heard what they have had to say; you have noticed their manner of testifying, and you have heard more or less about what kind of people they are. All these things you should also keep in mind when you are weighing the testimony of any witness, in order to determine what credibility it is entitled to."

[3, 4] At common law the uncorroborated testimony of an accomplice will support a verdict of conviction. But the decisions all recognize the unsatisfactory character of such testimony, and the serious infirmities with which it is attended, and in many jurisdictions the common-law rule has been changed by statutes expressly declaring that the uncorroborated testimony of an accomplice cannot sustain a conviction.

"These statutes crystallize in a rule of positive law what was already a rule of practice, which to greater or less extent courts regarded themselves bound to observe; for it has long been the custom, both in England and America, for the courts, not only to caution the jury as to the danger of acting upon the unsupported testimony of an accomplice, but to advise them not to convict, unless there is some corroborating evidence." 1 R. C. L. p. 167.

For more than 40 years in this jurisdiction it has been the practice to safeguard the interests of accused in prosecutions for serious of-

fenses, where the testimony of accomplices has been admitted, by bringing directly to the attention of the jury the nature of such evidence, and the danger of convicting unless they should find supporting or corroborating evidence. Thus in United States v. Neverson, 1 Mackey (12 D. C.) 152, the court instructed the jury:

"That the testimony of accomplices is admitted from necessity, it being often impossible to bring the principal offenders to justice, without having recourse to such evidence; and the jury may, if they see fit, act upon the evidence of an accomplice, even in a capital case, without any confirmation of his statement. * * * The court advises the jury that, if they shall believe from the evidence that Johnson [a witness] was an accomplice in the murder, the jury should not convict the prisoners upon the testimony of Johnson alone and without corroboration."

In Maxey v. U. S., 30 App. D. C. 63, the jury had been instructed that—

"The general rule is that, where an accomplice testifies in a case, his or her testimony is to be taken with great caution, because of the guilt which he has to admit himself as against himself. And the rule is that the jury are to be cautioned not to find defendants guilty upon the uncorroborated testimony of accomplices. They may do so, but the rule is for the court to caution them * * * not to do that without corroborating testimony."

In Thompson v. U. S., 30 App. D. C. 352, 12 Ann. Cas. 1004, a woman upon whom an abortion had been committed was a witness, and the defendant insisted that she was an accomplice. The trial court rejected this contention, but instructed the jury that—

"While she is not an accomplice, strictly speaking, inasmuch as, from her own evidence, she morally implicates herself in the act, the jury should consider that circumstance as bearing on her credibility."

This court found she was not an accomplice and that—

"The instruction in regard to the credibility of the witness was as much as the defendant had a right to expect."

The latest expression of the Supreme Court of the United States upon this subject is to be found in Caminetti v. U. S., 242 U. S. 470, 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168. There the trial court had been asked to instruct the jury that certain witnesses were accomplices, a controverted question. The court referred to its decision in Holmgren v. U. S., 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778, where the trial court had been asked, in effect, to rule as matter of law that a witness was an accomplice, and the Supreme Court said:

"The request did not properly state the law, as it assumed that Werta [a witness] was an accomplice, a conclusion which was controverted, and against which the jury might have found in the light of the testimony. It is undoubtedly the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony before giving credence to them. But no such charge was asked to be presented to the jury by any proper request in the case, and the refusal to grant the one asked for was not error."

It thus will be seen that, while the Supreme Court recognizes that there is no absolute rule of law preventing convictions upon the testi-

mony of an accomplice, the jury should be instructed and cautioned as to the character of such testimony and the danger of convicting without supporting evidence. The inference is plain, we think, that the judgments were sustained in the Caminetti and Holmgren Cases because defendants asked too much, or, as the court said in the Holmgren Case, the instructions requested "did not properly state the law," in that they assumed as facts matters which were in controversy. Certain it is that the Supreme Court has not ruled that the refusal of a trial court to grant a proper instruction, in a case where there is little, if any, evidence other than that of accomplices, is not so prejudicial to the accused as to warrant an appellate court in awarding him a new trial.

[5-7] Coming back to the present case, unquestionably the jury might have found that each of the three women who testified was an accomplice as to the others. Bennett v. U. S., 227 U. S. 333, 339, 33 Sup. Ct. 288, 57 L. Ed. 531. Not only were these witnesses accomplices as to one another, but under the evidence they might have been found guilty of conspiracy. United States v. Holte, 236 U. S. 140, 35 Sup. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281. The testimony of the two male members of the party was even more tainted, for unquestionably under that testimony their conduct was as culpable as that of defendant. The fact that they so freely implicated themselves in testifying against this defendant is significant, especially as it does not appear that either has been prosecuted. The situation confronting the trial court, therefore, was unusual. There was no direct evidence that was untainted. While it is not improbable that the same result would have been reached, had the court cautioned and advised the jury as to the danger of convicting upon the uncorroborated testimony of accomplices, it is not for us to speculate upon this question and resolve it against the accused. The charge of the court fell far short, in our view, of the requirements of the situation. It amounted to nothing more than the general admonition, which it is proper for the court to give in all cases.

The question which the defendant sought to have brought to the attention of the jury, presenting a material, if not vital, issue in the case, was not even mentioned. Had the court defined an accomplice, and brought sharply to the attention of the jury the character of the government's testimony against the defendant, it cannot be doubted that his counsel would have been in a better position to present his case to the jury, and who may say that the point of view of the jury might not have been different. While the request included only two of the witnesses, it was sufficient to bring to the attention of the court the fact that some of the witnesses, at least, might be considered accomplices, and hence that the jury should be cautioned and advised concerning such testimony. When we come to consider that in many jurisdictions it is a positive rule of law that no conviction may be had upon the uncorroborated testimony of an accomplice, the importance of the rule in this and other jurisdictions, requiring caution and advice in this connection, is apparent. The jury may convict without corroborating evidence, but in a case like the present the accused is entitled to have the court first caution and advise the jury.

As to the failure of the defendant to include in his request all of the witnesses who might have been regarded as accomplices, see Skuy v. U. S., 261 Fed. 316, where the Circuit Court of Appeals for the Eighth Circuit, speaking through Circuit Judge Sanborn, said:

"The contention that proper objections were not made, and proper exceptions were not taken, to permit the consideration in this court of the issues which have been discussed, has not escaped attention, but it fails to convince. Hall v. United States, 150 U. S. 76, 80, 82, 14 Sup. Ct. 22, 37 L. Ed. 1003; Waldron v. Waldron, 156 U. S. 361, 380, 381, 382, 15 Sup. Ct. 383, 39 L. Ed. 453. And even if it were tenable, this is a trial for an alleged crime, it involves the liberty of the citizen, and the fault in the trial is so radical that it may well be noticed and corrected by this court without objection, exception, or assignment. Wiborg v. United States, 163 U. S. 632, 659, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; August v. United States, 257 Fed. 388, 391, 393, —— C. C. A. ——."

Believing that the defendant was not accorded the fair and impartial trial to which he was entitled, and that his interests may have been substantially affected, we are constrained to reverse the judgment and award a new trial. Surely, if it was the duty of the trial court to caution and advise the jury in the respects pointed out, and we are certain that it was, nothing short of a reversal of the judgment will save the defendant from the harm that may have resulted from the want of such caution and advice.

Judgment reversed, and case remanded, with instructions to grant a new trial.

Reversed, and new trial awarded.

SMYTH, Chief Justice (dissenting). I am constrained to dissent because in my judgment:

(a) The women were not accomplices. Hays v. United States, 231 Fed. 106, 110, 145 C. C. A. 294; Diggs v. United States, 220 Fed. 545, 553, 136 C. C. A. 147; United States v. Holte, 236 U. S. 140, 35 Sup. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281. And, if they were,

(b) The refusal to give the requested instruction was not reversible error. Caminetti v. United States, 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Wallace v. United States, 243 Fed. 301, 310, 156 C. C. A. 80. These cases are all later than United States v. Neverson, 1 Mackey (12 D. C.) 152.