CARROLL, CHAS., Judge.
The appellant was informed against, tried, convicted of conspiracy, and sentenced to imprisonment for one year.
The information charged that Tom Murphy, Larry Gysin, Frank McNamara and the appellant “did knowingly and unlawfully agree, conspire, combine, and confederate one with the other to commit the crime of larceny of automobiles; * *
The information then set forth:
“I. In furtherance of said conspiracy the said Murray Weiss did counsel, advise, and instruct the said Tom Murphy to change the manufacturer’s serial number on the automobiles to be stolen;
"II. And in furtherance of said conspiracy, the said Tom Murphy, Larry Gysin, and Frank McNamara did steal automobiles, to-wit: One 1958 Oldsmobile Holiday Sedan, property of Abe Abramowitz, one 1958 Chevrolet Station Wagon, property of William J. Glasscock, one 1958 Oldsmobile ‘88’ Holiday Coupe, property of Jacob L. Safier, and other automobiles, a better and more particular description of other automobiles being to the State Attorney unknown;
“III. And in furtherance of said conspiracy the said Murray Weiss did receive from the said Tom Murphy a part of the money received from the sale of the stolen automobiles, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.”
At the outset of the trial, the state presented three witnesses, Abramowitz, Safier and Glasscock, who testified that automobiles owned by them, fitting the description of those listed in the information, had been stolen. Appellant’s counsel made due objection to the admission of that testimony. No evidence was presented to connect the appellant with those automobiles. Appellant’s alleged co-conspirators testified as to the theft of some 16 automobiles, but did not include those automobiles which Abramowitz, Safier and Glasscock had said were stolen from them. The testimony of the three car owners was wholly immaterial to elements of the charged conspiracy, and not shown to be relevant to any conduct of the accused.[1] The admission of such testimony was substantial error which inescapably produced a harmful result. This is so because there is no way to know what effect or influence that damaging evidence may have had on the conclusion reached by the jury. See Gunn v. State, 78 Fla. 599, 83 So. 511, 512. Applicable here is that language used by the Supreme Court, with reference to inadmissible evidence offered by the state to bear on the guilt of an accused, in Young v. State, 85 Fla. 348, 96 So. 381, 384, and again in Davis v. State, Fla.1953, 65 So.2d 307, 309, viz.:
“ ‘This court cannot look into the minds of the jury and determine to what extent such testimony induced the verdict. Nor can we say that it had no effect and was harmless.’ ”
The three men named with appellant in the information pleaded guilty and testified against him. Without their testimony there was not sufficient evidence to sustain a conviction. With their testimony other evidence took on significance adverse to appellant. Therefore, their credibility and the weight to be given their testimony were important to the case.
The trial judge refused a request to charge the jury that such testimony should be received with caution, stating he was of the opinion that such a charge, required when an accomplice testifies, was not applicable to conspirators. The law appears otherwise.[2] One alleged conspirator may *530 testify against another, but when that occurs the rule governing the testimony of an accomplice applies to require a cautionary charge. Therefore, the requested 'charge, that testimony of the alleged co-conspirators is to be received with great caution, should have been given, and its refusal was prejudicial.[3]
For the reasons stated the judgment appealed from is reversed and the cause remanded for new trial.
Reversed.
HORTON, C. J.,' and PEARSON, J., concur.

. Wharton’s Criminal Evidence, § 159 at p. 306 (12th ed.).

. Roberts v. State, 72 Fla. 132, 72 So. 649; 11 Am.Jur., Conspiracy, § 43; 14 Am.Jur., Criminal Law, §§ 108 et seq.

. Roberts v. State, supra, n. 2; Peterson v. State, 95 Fla. 925, 117 So. 227; Barnum v. State, 137 Fla. 438, 188 So. 346, 351; Padgett v. State, Fla.1951, 53 So.2d 106, 109. Cf. Freed v. United States, 1920, 49 App.D.C. 392, 266 F. 1012. The cautionary rule evolved reac-tively from the early common law doctrine of “approvement”, under which when a confessed accomplice (“approver”) testified for the Crown, he did so knowing that acquittal of the accused would mean the gallows for the “approver.” 4 Blackstone’s Commentaries 330, 331. See Discussion in Lee v. State, 115 Fla. 30, 155 So. 123, 127-128