**Girardo V. DE LORENZO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 12228.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 20, 1954.

Decided Feb. 3, 1955.

Petition for Rehearing Denied
Feb. 25, 1955.

---

Mr. Bernard Margolius, Washington, D. C., for appellant. Mr. Ralph H. Deckelbaum, Washington, D. C., also entered an appearance for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Arthur McLaughlin, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before EDGERTON, MILLER and BASTIAN, Circuit Judges.

PER CURIAM.

Appellant was indicted, tried and convicted of the crime of rape, D.C.Code, § 22–2801 (1951). As grounds for reversal he urges (1) that the admission in evidence of appellant's oral confessions was error and (2) that the argument of Government counsel was highly prejudicial and denied appellant a fair trial.

We have searched the lengthy record in this case with care and can find no basis for ruling that the appellant's confessions were inadmissible as a matter of law. The trial court carefully instructed the jury that the issue of voluntariness of the confessions was one for the jury to determine.[1]

It is to be noted that, contrary to the usual practice, the trial judge did not in the first instance hear the testimony as to the admissibility of the confession out of the presence of the jury. However, the present case is covered by what we said in Tyler v. United States, 90 U.S.App.D.C. 2, 193 F.2d 24, 28, certiorari denied 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326:

"Although the usual procedure of a preliminary inquiry by the judge was not followed, still, in view of the issue which developed, it finally turned out that the matter had to be heard and determined by the jury. Obviously, therefore, no harm was done by the fact that the evidence was heard in the first instance before the jury. Clearly, the defendant suffered no prejudice, for a preliminary hearing would have had exactly the same result."

Moreover, the trial judge offered appellant's counsel the opportunity to hold a preliminary hearing and the offer was not accepted.

We have examined the record to ascertain whether the closing argument of the prosecuting attorney was, as appellant claims, so improper as to require reversal. His argument was vigorous,

---

1. "The Government has introduced in evidence certain oral statements claimed to have been made by the defendant while in the custody of the police. Defendant's contention is that whatever statements were made by him were not made voluntarily but were the result of physical and mental coercion caused by hunger, weariness and refusal by the police to permit him to contact his mother.

"In this respect you are instructed as follows:

"The jury must first determine what, if any, statements were made by the defendant while in the custody of the police. The jury must next consider, with respect to such statements, if any, whether they were made by the defendant voluntarily and of his own free will and with full knowledge of the nature and the consequences of them. In determining whether a statement of [sic] confession is voluntary or not, you should consider the relation of the parties, the conversation between the police officers and the defendant, if any, the time and place when the alleged statement or confession took place, the physical condition of the defendant, and all the circumstances surrounding its making."

The jury were further instructed as follows:

"You are admonished that evidence of any oral confession or confessions made by a defendant while he is under police custody should be received with caution and scrutinized with care."

to be sure, but so was that of defense counsel. We find no error on that score.

Affirmed.

EDGERTON, Circuit Judge (dissenting).

The prosecuting attorney said to the jury:

"Now, when I say to you about the seriousness of this case, in asking for the death penalty I want to try to impress upon you as to this seriousness. Of course, we tried to bring it home to each individual and, ladies and gentlemen of the jury, put yourself in the position of this girl, say a daughter of yours—

"Mr. Margolius: I object.

"The Court: The objection is overruled.

"Mr. McLaughlin [prosecuting attorney]: Put yourself in this situation as though this was your wife. Put yourself in the position that for some reason or other you were working that night, or away from home that night, and your wife was there alone and about 5 or 6 o'clock that morning you receive a telephone call telling you what happened in your house? What frame of mind would you be in? Would you think it was serious?

" * * * it is for each of you here in these cases to decide whether or not we are going to have law and order. * * * So I say consider this case, and consider it seriously, because when you leave here at the end of the month and you go about your daily work there are going to be times when you say to yourselves, 'I wonder what those jurors are doing down there. I wonder if those jurors by their oaths and by their decisions in these cases are protecting me and my family' * * *. I say to you, and I hope it never happens to any of us, what would you do, man, woman or child, if you were lying in your bed at night in what you think is the security of your home and you are awakened and you see someone there with a knife of this type? What would you do? If you escaped, regardless of what this individual insisted upon then doing, the only thing, would you say next day to yourself, or some of your friends, 'It was only by the grace of God that that man did not cut my throat?'

"So, ladies and gentlemen of the jury, from the evidence in this case, and again I want to impress upon you this girl is lying in her own bed, in her own home, where she had a right to be and, as I say, if you lived in that neighborhood it could just as well have been one member of your family. * * *"

This "argument" was grossly improper. It could have no other purpose or tendency than to arouse the passions and prejudices of the jury. It had nothing to do with the guilt or innocence of the defendant. The jury were not admonished to ignore it. In my opinion it is so prejudicial that it requires reversal of the conviction.

In other respects I concur in the opinion of the court.