Melvin L. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 4419.

District of Columbia Court of Appeals.

Argued Sept. 18, 1967.

Decided Jan. 19, 1968.

Noel H. Thompson, Washington, D.C., appointed by this court, for appellant.

A. Lee Fentress, Jr., Asst. U.S. Atty., with whom David G. Bress, U.S. Atty., Frank Q. Nebeker and James E. Kelley, Asst. U.S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

This appeal is from a conviction by a jury of carrying a pistol without a license.[1] Of the numerous errors alleged, appellant would have us consider those not raised below as plain error.

The testimony is that on the night of October 22, 1966, a police officer, while standing on the corner of Fourteenth and Clifton Streets, N.W., heard several gun shots. He looked in the direction from which the shots had come and, about 25 yards away, saw appellant and two other men move away from a crowd of people on the steps of an apartment building and cross the street to enter a parked car. As he approached the car, a young girl shouted that it was "the one in the dark suit".[2] When the officer reached the car appellant was sitting in the back seat and the other two men in front. He asked which one had the gun and, as no one responded, ordered all three out of the car and searched them one by one, the appellant last. When appellant was found to be wearing a gun holster he said: "Just because I have a holster doesn't mean I have a gun."[3] The car was searched and under the back seat the officer found a gun with the handle facing the place where appellant had been sitting. The barrel of the gun was hot, and two shells had been expended. Appellant was then advised that he was under arrest for discharging firearms and for carrying a dangerous weapon. An eyewitness, one of the other men in the car, testified that he saw appellant draw a pistol and fire two shots in the air. Appellant testified that he heard the shots from a distance of about three feet away, but did not look to see who fired them.

It is alleged that Code §§ 22–3204, 22–3206 violate appellant's right to keep and bear arms guaranteed by the Second Amendment. It cannot be said, however, that the statute is so clearly unconstitutional that it should have been ruled upon by the trial court despite the failure of appellant to raise the point below, and in such circumstances we decline to exercise our discretion to consider a constitutional question raised for the first time on appeal. Trimble v. United States, 125 U.S. App.D.C. 173, 369 F.2d 950 (1966); Page v. United States, 282 F.2d 807 (8th Cir. 1960); Howard v. United States, 58 App. D.C. 179, 26 F.2d 551 (1928).[4]

---

1. D.C.Code 1967, §§ 22–3204, 22–3206.

2. This hearsay statement by the unidentified child was not admitted before the jury but was considered by the trial judge in ruling on a motion to suppress.

3. This testimony was elicited on rebuttal after appellant was asked on cross-examination, without objection, if he had made such a statement. There is contradictory testimony as to whether the officer searched appellant before or after he searched the car, and whether he searched the other two men at all. Appellant denied having a gun holster, and did not have one on his person when he arrived at the police station. It was never accounted for thereafter, and consequently not introduced in evidence.

4. The Supreme Court has stated that "the right of the people to keep and bear arms * * * is not infringed by the laws prohibiting the carrying of concealed weapons; * * *." Robertson v. Baldwin, 165 U.S. 275, 281–282, 17 S.Ct. 326, 329, 41 L.Ed. 715 (1897). See United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939).

█ It is alleged that the Government has the burden of showing as an element of its proof that appellant does not come within the statutory exception to D.C.Code 1967, § 22–3204.[5] But in Brown v. United States, D.C.Mun.App., 66 A.2d 491, 493–494 (1949) we said:[6]

> It is well settled that in certain criminal proceedings the burden of proceeding with the evidence may be shifted to a defendant. Among familiar examples * * * is where a defendant relies upon an exception in a statute. Then it is the burden of the defendant to bring himself within the exception rather than that of the prosecution to negative it.

█ It is alleged that the Government had an affirmative duty to collect evidence for appellant's use which might have been exculpatory, and that no paraffin or fingerprint tests were made in this case. But the cases cited by appellant do not support his position. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), dealt with a blood test taken from a defendant suspected of drunken driving, and the Court's holding was limited to finding that the taking of such a test did not violate defendant's constitutional rights against self-incrimination or to be free from unreasonable searches and seizures. Winston v. Commonwealth, 188 Va. 386, 49 S.E.2d 611 (1948), was decided under a provision of the Virginia Constitution giving a defendant in a criminal proceeding the right to call for evidence in his favor. Winston requested many times to be taken to a doctor or

allowed bail in order to see a doctor who would take a blood test to show whether or not he was under the influence of alcohol. The basis of the decision was that the defendant was denied a chance to obtain exculpatory evidence because of an illegal delay in taking him before a magistrate. The circumstances here are quite different. We know of no requirement that imposes upon the Government an affirmative duty to make paraffin or fingerprint tests; moreover, there was no request that these tests be made, and there is no showing of prejudice resulting from the absence of such tests.

█ It is alleged that the prosecutor expressed his personal opinion as to the credibility of appellant's testimony and as to the strength of the case against appellant. But a careful review of the record indicates that the comments on appellant's credibility were in each instance followed by specific references to facts in evidence. And while it was improper for the prosecutor to argue that he felt strongly personally about the case and that "this case is one of the strongest cases I believe I have had", we do not believe the error was prejudicial in the context of the whole argument, even in the absence of a cautionary instruction from the court.[7] Keeble v. United States, 347 F.2d 951 (8th Cir.), cert. denied, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 350 (1965); DeLorenzo v. United States, 95 U.S.App.D.C. 74, 219 F.2d 506, cert. denied, 349 U.S. 964, 75 S.Ct. 897, 99 L.Ed. 1286 (1955); Pritchett v. United States, 87 U.S.App.D.C. 374, 185 F.2d 438 (1950), cert. denied, 341 U.S. 905, 71 S.Ct. 608, 95 L.Ed. 1344 (1951); McFarland v. United States,

---

5. D.C.Code 1967, § 22–3205.

6. See also Williams v. United States, 78 U.S.App.D.C. 147, 138 F.2d 81, 153 A.L.R. 1213 (1943); Reed v. United States, D.C. App., 210 A.2d 845 (1965).

7. No objection was made to the opening statement, the closing argument, or the court's instructions. See Villaroman v. United States, 87 U.S.App.D.C. 240, 184 F.2d 261, 21 A.L.R.2d 1074 (1950);

Ginyard v. United States, D.C.App., 232 A.2d 590 (1967). And we do not deem prejudicial the prosecutor's ambiguous remark in opening statement, also assigned as error, that the officer "had heard something, and I am not going to tell you right now what he heard because his Honor will have to rule on the admissibility of that evidence." See Allen v. United States, 106 U.S.App.D.C. 350, 273 F.2d 85 (1959), cert. denied 363 U.S. 831, 80 S.Ct. 1603, 4 L.Ed.2d 1525 (1960).

80 U.S.App.D.C. 196, 150 F.2d 593 (1945), cert. denied, 326 U.S. 788, 66 S.Ct. 472, 90 L.Ed. 478 (1946).

■ It is alleged that appellant's statement, "Just because I have a holster doesn't mean I have a pistol", was a product of custodial interrogation proscribed by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). But this testimony, given on rebuttal, was in evidence without objection and since we perceive no plain error, we will not consider this issue for the first time on appeal. United States v. Indiviglio, 352 F.2d 276, 279 (2d Cir. 1965); Ginyard v. United States, D.C.App., 232 A.2d 590 (1967); cf. Williams v. United States, 113 U.S.App.D.C. 7, 303 F.2d 772, cert. denied, 369 U.S. 875, 82 S.Ct. 1145, 8 L.Ed. 2d 277 (1962); Villaroman v. United States, 87 U.S.App.D.C. 240, 184 F.2d 261, 21 A.L. R.2d 1074 (1950).

■ Finally, it is alleged that it was error to deny appellant's motion to suppress. But probable cause for the arrest without a warrant and for the search is established by the facts within the knowledge of the arresting officer at the time of the arrest. According to the officer's testimony, he had heard shots fired, had seen appellant and two others running across the street to a parked car, had been told by a young girl that it was the "one in the dark suit", and had seen that appellant was wearing a dark suit. Furthermore, his question as to who had the gun was met with silence. In quite similar circumstances, in Cormier v. United States, D.C.Mun.App., 137 A.2d 212, 214 (1957) we stated:

Nor can we agree that the arrest followed the search and resulted from it. While the officer never specifically told appellant prior to the search, that he was under arrest, his actions in ordering him to stand up and in seizing his hand

clearly constituted a restraint on his liberty and thus an arrest.

So, here, upon ample probable cause, there was a restraint of appellant's liberty and a proper search of both his person and of the car.[8]

As we find no error, the conviction is

Affirmed.

---

8. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Mosley v. United States, D.C.App., 209 A.2d 796 (1965); Dickerson v. United States, D.C.Mun.App., 120 A.2d 588 (1956).